# CHARLESTON.

### HOLMES v. WEST *et al.*

Submitted November 6, 1917. Decided November 13, 1917.

APPEAL AND ERROR—*Expert Testimony—Weight.*

When in a suit contesting a will for the alleged incompetency of the testator to make a valid will, the proof of the facts and circumstances founded on the personal observations of the witnesses for the proponents is such as to show beyond doubt the competency of the testator, the mere opinion evidence of medical experts upon hypothetical questions, if properly propounded by contestants, is entitled to but little weight, and its rejection will not be good ground for reversing a judgment in accordance with the verdict of the jury that the instrument in question was in fact the true last will and testament of the testator.

Appeal from Circuit Court, Tyler County.

Suit by John Raymond Holmes against August West and others. From a decree for defendants, complainant appeals.

*Affirmed.*

*G. D. Smith, Carl G. Bachmann* and *Conley & Johnson,* for appellant.

*Underwood & Moore,* for appellees.

MILLER, JUDGE:

Upon an issue *devisavit vel non* tried before a jury the verdict upon which the decree of March 10, 1916, com-

plained of, was rendered, was that the paper writing in controversy and which was admitted to probate in the clerk's office of the county court of Tyler county, on October 15, 1895, as and for his last will and testament, was in fact the true last will and testament of Marcus M. Holmes, deceased.

Plaintiff and contestant who filed the bill is the son of the testator, unborn at the date of the decree divorcing father and mother. The date of his birth was August 17, 1892; he therefore reached his majority August 17, 1913, and on August 8, 1914, he instituted this suit to contest his father's will made September 12, 1895, and formally admitted to probate October 15, 1895. Plaintiff never resided with his father, but with his mother, and so far as the record shows, his father never otherwise became interested in him except that in his will he made him his beneficiary to the extent of ten dollars only.

The paper in question is as follows:

"Little Mills, W. Va.

This will made this the twelfth day of September, Eighteen Hundred and Ninety-five, is the last will and bequest of Marcus M. Holmes.

I bequeathe all my property, both real and personal, to Agnes Holmes and Maggie L. Holmes, my sisters, except Ten Dollars in cash which I bequeathe to my son John Raymond Holmes.

Witness my hand and seal." The paper was signed by "Marcus M. Holmes" by his mark and J. C. Cooper and Robert Morris, witnesses.

The ground of contest was the alleged incompetency of the testator to make a valid will of his property, owing to mental and physical weakness induced by an incurable disease with which he was suffering at or about the time of making the will, and fraud and undue influence employed to procure the making thereof.

On behalf of the proponents the making and execution of the will by the testator and the due attestation thereof was duly proven by Morris, the scrivener who prepared the will, directed as to form by a justice of the peace, and also one of the subscribing witnesses, and by Henderson, a witness

present at the time, and who was subsequently appointed administrator with the will annexed of said Holmes, and one of the defendants to the bill.

Not a particle of evidence was offered by the contestant to prove fraud or undue influence and the only evidence introduced or offered to show incompetency on the part of the testator at the time of making his will was the evidence of Doctor D. C. Smith, sixty-four years of age, the physician who attended the testator in his last illness, from about September 1st to October 2nd, 1895, and the evidence of two other physicians offered as experts to give their opinions as to the competency of the testator, based on the evidence of Doctor Smith and facts testified to by the witness Henderson.

The evidence of the witnesses for the proponents of the will on the question of competency of the testator on September 12, 1895, is so clear and convincing as to leave no doubt as to his capacity to make a will. Their evidence in substance is that though the testator was sick, and his feet and arms partially paralyzed, the reason given for his signing the will by his mark, and not with his own proper signature, yet his mind was perfectly clear, or seemed to be; that he sent Henderson to the home of Morris, two or three miles away, to get Morris, to write the will, and that he told the scrivener exactly what disposition he wanted to make of his property, without suggestion from any one, and that when the will was so prepared it was read over to him, pronounced satisfactory, and he signed it by his mark in the presence of the witnesses, who signed it in his presence and in the presence of each other.

On behalf of the contestant the evidence of Doctor Smith was that the disease with which the testator was afflicted and from which he died, was "a general break down of the vital powers, general debility"; that he "attributed it to one of two things, syphilitic or progressive defused meningo and encephalitis", meaning "slow grade of *inflamation* of the brain structure"; and also that "a stomach weakness, also followed." And when asked whether a man suffering from this disease "would be capable of fully understanding the object of his bounty, in order to make a legal and valid dis-

posal of his property", he answered, "Well at times he would and at times he would not. He seemed to be rational in the beginning and towards the middle of his sickness, at most times, but towards the last of his sickness, he was not capable of transacting any business." And the question being repeated, he answered, "I think he would be in the beginning, but in the last he would not."

Such being substantially all the evidence introduced on the issue submitted to the jury the only grounds upon which we were induced to award the appeal was the possibility that the trial court had erred in denying to the contestant the right to have answered certain hypothetical questions propounded to Doctors Gale and Riley, based on the testimony of Doctor Smith and the witness Henderson. But after due consideration of those questions which were inartistically, if not badly, formed to elicit the evidence desired, and the proffers made by counsel thereon, we are satisfied that no prejudicial error was committed by the court in its rulings, and that no matter what the evidence of those witnesses might have been, would we allow it sufficient force to overthrow the will, so satisfactorily established by the evidence of the other witnesses.

Moreover, as we understand Doctor Smith's evidence, his treatment began about September 1st, and up to the middle of his treatment which would be about September 15th, the testator seemed rational and that it was only in the last period of his illness between the middle of September and the date of his death that he observed symptoms of mental derangement incapacitating him. This evidence tends rather to support the fact of competency on September 12th, than otherwise, and to corroborate the witnesses for proponents. Besides this evidence, Doctor Riley, to whom hypothetical questions were also addressed, based on the evidence of the witness Henderson, that at the date of the execution of the will the testator's arms and legs were partially paralyzed, says in answer to a question which he was permitted to answer that "it would be possible that his mind would still be clear"; and in answer to another question, "Well, the lesion is usually in the spinal cord where both arms and legs are

paralyzed, and the brain might not be affected at all or it might be affected; it would depend altogether on the cause.''

A few days before the testator made his will he was at Wheeling to consult a doctor accompanied by the witness Henderson. After his return he transacted considerable business, and gave directions in relation thereto, in a perfectly rational way, showing accuracy in his mental processes as well as a good memory, and this condition of his mind continued up to and even after the date of the will. While evidence of the condition of a testator's mind prior and subsequent to the making of a will is admissible, that the condition of his mind may be clearly laid before the jury, nevertheless, the ultimate fact to be established is the condition of his mind at the date of the making of the will. Page on Wills, section 394. And the rule respecting opinion evidence of experts is that it is entitled to but little weight as against the proof of facts showing mental capacity. *Burley* v. *McGough,* 115 Ill. 11; *Hall* v. *Perry,* 87 Me. 570; *Draper's Estate,* 215 Pa. St. 314.

We think it very doubtful whether the hypothetical questions propounded were in proper form or substance to elicit the testimony desired; but on this question it is unnecessary to express an opinion for, as already indicated, no evidence based thereon could be allowed to overcome the proof of facts and circumstances founded on personal observation of witnesses, and showing beyond doubt capacity in the testator to make a will. 1 Schouler on Wills, section 207, and cases cited.

Numerous other points were presented and argued by counsel which we have given due consideration, but as they present questions not necessary to the decision of the case, we think it unnecessary to more particularly respond to them.

Our conclusion is to affirm the decree.

*Affirmed.*